UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 04-29-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SCOTTY REECE RIDNER, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is currently pending for consideration of Defendant Scotty Reece Ridner's motion to dismiss and motion for release from custody. [Record Nos. 98, 99]  Specifically, the Defendant has moved the Court to dismiss this indictment against him based on his alleged failure to receive a speedy trial in accordance with the Sixth Amendment and the Speedy Trial Act of 1974, 18 U.S.C. § 3161.  Alternatively, the Defendant has asked the Court to review the conditions of his detention and release him from custody.  For the reasons discussed herein, the Court will deny both motions.

I.      BACKGROUND

On April 21, 2004, a federal grand jury returned an indictment charging Defendant Scotty Reece Ridner with unlawful possession of an illegal firearm and three rounds of ammunition in violation of 18 U.S.C. § 922(g)(1), § 922(e)(1) and 26 U.S.C. § 5861(d).  Scotty Ridner was arrested on July 16, 2004, and was arraigned on July 27, 2004.  He filed a motion to suppress on August 18, 2004, which was denied on September 9, 2004.

-1-

On September 2, 2004, the grand jury returned a superseding indictment which named two additional Defendants: Freddy Ridner and Ella Mae Goodin. With respect to Scotty Ridner, the superseding indictment charged that he unlawfully possessed an illegal firearm and ammunition and aided and abetted his co-defendants in possessing an illegal firearm. The three Defendants were arraigned on the superseding indictment on September 13, 2004.

On October 6, 2004, Defendant Freddy Ridner filed a motion for a competency evaluation. In light of this motion, the United States moved to continue the pretrial and trial, which were scheduled for October 25, 2004, and November 9, 2004, respectively. None of the Defendants objected to this continuance. On October 7, 2004, the Court granted Freddy Ridner's motion for a competency evaluation and ordered that the examination be completed within 45 days. By separate Order, the Court also granted the United States' motion for a continuance and rescheduled the pretrial conference for December 13, 2004, and trial for January 4, 2005. On November 16, 2004, Magistrate Judge J.B. Johnson, Jr. entered an Order stating that he had been advised by the Warden of the Federal Medical Center in Lexington, Kentucky ("FMC Lexington") that the facility needed additional time to complete Freddy Ridner's competency evaluation. Thus, the Magistrate Judge extended the time for FMC Lexington to complete the evaluation to December 23, 2004. Thereafter, the United States filed a motion to again continue the pretrial and trial as to all three Defendants. Specifically, the United States requested that the trial be continued until such time as Freddy Ridner's competency evaluation was completed. The United States further asserted that a continuance as to *all* Defendants was necessary due to the nature of the charges. Again, none of the Defendants, including Scotty Ridner, objected to

-2-

the United States' motion. The Court continued the pretrial and trial to February 7, 2005, and March 1, 2005, respectively.

The report of the competency evaluation was filed in the record on January 20, 2005, and a competency hearing was scheduled to begin the following day before Magistrate Judge Johnson. Due to problem with the report, the hearing was continued until February 8, 2005. Counsel for Defendant Scotty Ridner indicated, at that time, that he intended to file a motion to sever. However, he later filed a "notice" of intent not to file a motion to sever, stating that "upon further research, reflection, and consultation . . . that he [was] in agreement with the United States' previous contention that a 'joint trial is necessary as a matter of justice and judicial economy.'" [Record No. 79]

At the competency hearing on February 8, 2005, counsel for Freddy Ridner and the assistant United States attorney agreed that Freddy Ridner needed to be evaluated by a forensic psychologist to determine his competency to stand trial. Accordingly, the Court continued the trial generally, pending resolution of Freddy Ridner's competency. [Record No. 82]  On February 18, 2005, the Court entered an Order recommending that Defendant Freddy Ridner be committed to the custody of USMCFP in Springfield Missouri (or other suitable facility) for a neuropsychiatric and neuropsychological examination. This recommendation was based upon information received by the parties which indicated that personnel at Springfield possessed special training to evaluate the Defendant's specific condition. (Such training was lacking at the institution in Lexington, Kentucky where the Defendant had been evaluated previously.)

On May 4, 2005, counsel for Scotty Ridner filed a motion for a detention hearing.  In this motion, he stated that he had not previously requested a hearing because Scotty Ridner had been serving a state sentence but that he had since completed service of that sentence. The Magistrate Judge conducted a detention hearing and determined, by clear and convincing evidence, that Scotty Ridner should remain in custody.

On August 31, 2005, counsel for Defendant Freddy Ridner requested a status conference, asserting that the Bureau of Prisons had failed to designate a facility qualified to evaluate his client's mental condition.  At the status conference, counsel for Freddy Ridner indicated that Dr. Judith Campbell at FMC Lexington was not qualified to determine Ridner's competency due to his neurological injury.  He further indicated that *Dr. Campbell* had recommended that Ridner be evaluated by Dr. Robert Denney at a facility in Springfield, Missouri.  However, counsel asserted that the BOP had previously refused to refer his client to that facility.  Therefore, counsel requested an evaluation by Dr. Robert Granacher.  Subject to the filing of a written response by the United States, the Court indicated that it would allow Freddy Ridner to be evaluated by another expert, but informed counsel that he would need to file a motion for the approval of expert fees.

For the first time at the August 31, 2005, status conference, Nick Vaughn, counsel for Scotty Ridner raised concerns regarding the Speedy Trial Act as it relates to his client.  The Court informed counsel to file an appropriate motion on this issue.  On October 3, 2005, counsel for Scotty Ridner filed a motion to dismiss and motion for release from custody on behalf of his client.  The United States responded to these motions on October 17, 2005.  These motions are

now ripe for review by the Court inasmuch as the time for counsel for Scotty Ridner to file a reply has expired.

## II.   ANALYSIS

### A.   *The Sixth Amendment Right to a Speedy Trial*

Scotty Ridner contends that the delays that have occurred in this case, from the time he was indicted to the present, violate his Sixth Amendment right to a Speedy Trial.  The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. Amend. VI.  In evaluating whether a defendant has received a speedy trial, the Supreme Court has articulated a four factor analysis.  These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice suffered by the defendant.  *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).  According to the Supreme Court, no one factor constitutes a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  *Id*. at 533.  Rather, in determining whether a defendant has been deprived of his right to a speedy trial, the court must examine each of these factors and any other relevant circumstances in the case.

### 1.   *Length of the Delay*

The first factor that the Court must consider is the length of the delay.  For speedy trial purposes, the length of the delay is measured from the earlier of the date of the indictment or the date of defendant's arrest.  *Cain v. Smith*, 686 F.2d 374 (6th Cir. 1982) (citing *United States v. Marion*, 404 U.S. 307, 320 (1971).  Courts have not established a fixed period of time that can said to be presumptively prejudicial.  Instead, whether a delay is presumptively prejudicial

depends on the nature and complexity of the crime. *Cain*, 686 F.2d at 381. In *Barker*, the Supreme Court noted that the "delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531. Further, in calculating the length of the delay, only those periods of delay attributable to the government or the court are relevant to a defendant's constitutional claim. *Id*. at 529 ("We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine."); *see also United States v. White*, 985 F.2d 271, 275 (6th Cir.1993) (excluding from the time counted towards a Sixth Amendment violation the time during which the defendant "expressly participated in the delay").

In this case, 18 months have passed since Scotty Ridner was initially indicted. The initial indictment against Scotty Ridner was returned on April 21, 2004. However, the United States superseded that indictment, adding two co-defendants, based on testimony obtained at the grand jury proceedings. The superseding indictment was returned on September 2, 2004. Scotty Ridner argues that the delay that has occurred in this case is "presumptively prejudicial." Specifically, the Defendant notes that he was indicted more than one year ago and that, at this time, there is no scheduled pretrial or trial date. In addition, the Defendant points out that he has been charged with "relatively simple and straightforward" offenses.

The length of the delay is a threshold requirement, one in which inquiry into the remaining *Barker* factors is unnecessary if the delay is not uncommonly long. *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003). When the delay is in excess of one year, the Sixth Circuit has stated that it is "presumptively prejudicial." *Wilson v. Mitchell*, 250 F.3d 388, 394

(6th Cir. 2001).  In those instances, the court must continue its inquiry into the remaining factors and the length of the delay is simply one factor among several in the speedy trial analysis.  While the Court acknowledges that Scotty Ridner has not been charged with particularly complex crimes, the Court must also consider the remaining *Barker* factors, including the reason for the delay, in determining whether his Sixth Amendment right to a speedy trial has been violated.

### 2.    *Reason for the Delay*

Not all delays are susceptible to equal blame.  *Barker*, 407 U.S. at 531.  Governmental delays motivated by bad faith, harassment or attempts to seek a tactical advantage weigh heavily against the government whereas a valid reason for the delay weighs in favor of the government. *Id*. at 531; *see also Marion*, 404 U.S. at 325; *Schreane*, 331 F.3d at 553-54.  Under this second *Barker* factor, the Court is not searching for a blameless party.  Rather, the Court's concern is with "whether the government or the criminal defendant is more to blame for [the] delay." *Doggett v. United States*, 505 U.S. 647 (1992).

Although 18 months have passed since Ridner was initially indicted, there have been valid reasons for the delays in this case that are not necessarily attributable to one party.  The initial delay of five months was the result of a superseding indictment in which two more defendants were named.  Notably, however, most of the delays in the case have been associated with the completion of Freddy Ridner's mental competency examination.  In a recent Sixth Circuit decision, *Maples v. Stegall*, __ F.3d __, No. 04-1880, (6th Cir. October 25, 2005), the court addressed the issue of whether delays caused by a co-defendant should be weighed against

a complaining defendant in the context of a constitutional speedy trial claim. With respect to this issue, the court concluded that this determination is "circumstances-dependent" and that courts should consider a number of factors including:

> whether the defendant objected to the continuances, whether the defendant moved the trial court to comply with speedy trial requirements, whether the defendant moved for release, and whether the defendant's position and interests are aligned with the co-defendant

*Maples*, No. 04-1880, slip op. at 7, fn. 5. Although most of the delay that has occurred in this case has been caused by Defendant Freddy Ridner's request for a competency evaluation, the fact remains that Scotty Ridner has not objected, and, in fact, has agreed to the continuances requested by the United States. In his "notice" of intent not to file a motion to sever, counsel for Scotty Ridner indicated that, "upon further research, reflection, and consultation . . . that he [was] in agreement with the United States' previous contention that a joint trial [was] necessary as a matter of justice." [Record No. 79] Thus, any delay that may be attributable to the government based in the inability to have Freddy Ridner properly evaluated is offset by the Defendant's concession to the delays based on his own trial strategy. Moreover, there is nothing in the record that suggests – and counsel for Scotty Ridner does not argue – that the United States has acted in bad faith in delaying this case in an attempt to seek a tactical advantage over the Defendants. Thus, this Court finds that the reason for the delay (the failure to obtain a neuropsychological evaluation for Freddy Ridner) is not necessarily attributable to one party (or the Court). However, this factor does not tip in favor of the Defendant based on the fact that he has been willing to countenance extensive pretrial delays.

3. *Defendant's Assertion of his Speedy Trial Rights*

-8-

Under the *Barker* test, the third factor is whether a defendant has asserted his right to a speedy trial. "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. 531-32. Although the failure of a defendant to assert his right to a speedy trial does not demonstrate that there was no constitutional violation, the Supreme Court has emphasized that the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 528-29, 532. The timeliness, vigor, and frequency with which the right to a speedy trial is asserted are probative indicators of whether a defendant was denied access to a speedy trial. *Id*. at 528-29; *Cain*, 686 F.2d at 384.

Here, Scotty Ridner admits that he has not objected to any of the continuances sought by the United States. However, he contends that he had no reason to object because, at that time, he was serving a state sentence which was not expected to expire until after the anticipated trial date in this action. Thus, he states that "he had no significant reason to assert vigorously his right to a speedy trial." [Record No. 98, 99, p. 9] Apparently, now, Ridner has served his state court sentence and has decided to raise the speedy trial issue.

Ridner contends that he initially demanded a speedy trial in May of 2005, arguing that his motion for a detention hearing and request for pretrial release were the functional equivalent of a request for a speedy trial. This circuit has recognized a request for bail as an assertion of a speedy trial right. *See Maples*, No. 04-1880, slip op. 8 (citing *Redd v. Sowers*, 809 F.2d 1266, 1271 (6th Cir. 1987) ("A request for reduction of bail is equivalent to a request for a speedy trial."). Despite this fact, however, Scotty Ridner waited another five months before raising the

issue again when he filed the instant motion in October.  From the time Scotty Ridner was initially indicted until the date he requested a detention hearing, 13 months passed.  During that time period, not only did Scotty Ridner fail to request a speedy trial but he also failed to object to any of the continuances requested by the United States.  *See Wilson*, 250 F.3d at 396 (explaining that the third factor in a speedy-trial analysis calls on courts "to determine whether the defendant *timely* asserted his Sixth Amendment right") (emphasis added); *United States v. Thomas*, 167 F.3d 299, 305 (6th Cir. 1999) ("a defendant's failure to assert his rights in a timely fashion weighs heavily against his Sixth Amendment claim.").

In addition to the timeliness factor, the Court must also consider the forcefulness and frequency with which a defendant asserts his right to a speedy trial.  This Court cannot conclude that Scotty Ridner vigorously asserted his right to a speedy trial.  Until May of this year, Scotty Ridner did not invoke his right to a speedy trial.  In fact, his counsel affirmatively expressed in a "notice" to this Court that he desired a joint trial.  At the time counsel filed this notice, he was aware that the request necessarily meant that his client's trial would be delayed until Freddy Ridner's competency issues were resolved.

Based on all these facts, the Court finds that Scotty Ridner has not timely or aggressively asserted his desire for a speedy trial.  Again, this factor weighs against Scotty Ridner's claim that he has been denied a speedy trial.

### 4.    *Prejudice to the Defendant*

Under *Barker*, the final factor this Court must consider is the prejudice suffered by Scotty Ridner.  The Defendant must show that "substantial prejudice" has resulted from the delay.

*White*, 985 F.2d at 275 (6th Cir. 1993).  The Supreme Court has established that there are three relevant forms of prejudice in speedy trial cases: (1) "oppressive pretrial incarceration"; (2) "anxiety and concern of the accused"; and (3) "the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Schreane*, 331 F.3d at 557 (quoting *Barker*, 407 U.S. 514 (internal quotations omitted)).  In considering the prejudice factor, the Supreme court has stated that the frequency with which a defendant asserts his speedy trial right is probative indication of the prejudice he is suffering.  That is, "[t]he more serious the (speedy trial) deprivation, the more likely a defendant is to complain."  *Barker*, 407 U.S. at 531.

Scotty Ridner alleges that he has suffered from the second form of prejudice. Specifically, he argues that his lengthy pretrial incarceration has had a destructive effect on his dignity and human character.  In addition, he contends that his incarceration has disrupted his family life and has prevented him from securing employment.  As an afterthought, he further asserts that, by continuing to be detained, he is hindered from preparing his defense for trial.

The personal prejudice defendants suffer because of lengthy pretrial delays was discussed in *Barker*.  In that case, the Supreme Court stated that, in general, the time spent in jail awaiting trial has a detrimental impact an individual due to the fact that it usually results in loss of a job and disruption of family life.  In addition, the *Barker* Court noted that if a defendant is incarcerated, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense.

Even if Scotty Ridner has suffered *some* prejudice due to his pretrial detention, he certainly has not suffered *substantial* prejudice.  Ridner contends that the incarceration has

-11-

disrupted his family life, has isolated him from his friends, has force idleness upon him, and has prevented him from securing employment.  However, the Court notes that, until April of this year, Scotty Ridner was incarcerated on a state charge and was serving that sentence.  Thus, the Court is unpersuaded that he has faced a grave hardship based on his pretrial detention for the crimes charge in this case, particularly with respect to his family life and employment opportunities.  Additionally, in *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000), the Sixth Circuit held that if "the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced with specificity will not make out speedy trial claim no matter how great the ensuing delay."  *Howard*, 218 F.3d at 564. Ridner's failure to allege, with any specificity, how his defense has been prejudiced by the delays in this case is another factor that weighs against his claim that he was denied a speedy trial.

In *Howard*, the Court of Appeals also noted that "in calculating the length of the delay, only those periods of delay attributable to the government of the court are relevant to [the]  . . . constitutional claim."  *Id*. at 564.  In the present case, Scotty Ridner was incarcerated until April of this year.  Until that time, he did not oppose the United States' requests for continuances of the trial.  Likewise, he did not assert his speedy trial right (by requesting a detention hearing) until May, which was after he had completed his state sentence.  Even if this Court were to find that the United States has been negligent in prosecuting this case by failing to timely resolve Freddy Ridner's competency issue (which it does not), the fact remains that Scotty Ridner did not raise the speedy trial issue until May 2005.  And, even then, he simply requested a detention

hearing.  The Court cannot conclude that Scotty Ridner has made a timely or vigorous request for a speedy trial.  Thus, the Court finds that Scotty Ridner has not suffered substantial prejudice due to the delays in this case.

After considering the *Barker* factors as a whole, the Court finds that Scotty Ridner's Sixth Amendment right to a speedy trial has not been violated.  Most of the delays in this case have been caused by the filing and resolution of pretrial motion filed by Defendant Scotty Ridner and/or his co-Defendants.  In addition, Scotty Ridner has never objected to the continuances requested by the United States as a result of these motions.  Finally, Scotty Ridner has not shown and he has suffered any undue prejudice as a result of these delays inasmuch as he was incarcerated on state charges during a majority of the delays in this case.

### B.     The Speedy Trial Act

Scotty Ridner also argues that the Speedy Trial Act of 1974, 18 U.S.C. § 3161-74, has been violated.  Under this Act, a defendant is entitled to be brought to trial within seventy non-excludable days from either the date of his indictment or the date when he first appeared in court, whichever is later.  *United States v. Tinson*, 23, F.3d 1010, 1012 (6th Cir. 1994).  In the instant case, the Court finds that the United States has satisfied its burden of establishing that, even though seventy days have passed since the Defendant first appeared in court, seventy *non-excludable* days have not passed.  Therefore, the Court agrees with the United States that there has not been a violation of the Speedy Trial Act.

For purposes of the Speedy Trial Act, the clock began running on July 28, 2004:  the day after the Defendant was initially arraigned.  On August 18, 2004, the Defendant filed a motion

-13-

to suppress.  The Court denied this motion and adopted the Report and Recommendation of the Magistrate Judge on September 9, 2004.  Pursuant to 18 U.S.C. § 3161(h)(1)(F), the time from the date of the filing of that motion until the date it was resolved by the Court is excludable under the Speedy Trial Act.  On September 10, 2004, the United States filed a motion to continue the pretrial and trial on the grounds that a superseding indictment had been filed and the two co-defendants were not yet before the Court.  In granting motion, the court determined that:

> the ends of justice served by granting such motion outweigh the best interest of the public and defendant in a speedy trial, because failure to grant such a continuance would deny counsel for defendant the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

[Record No. 61] Thus, the time from September 28, 2004, through November 9, 2004, is excluded under the Act.

On October 6, 2004, Scotty Ridner's co-defendant Freddy Ridner filed a motion for a competency evaluation.  Notably, most of the delay in the case has been associated with the completion of Freddy Ridner's  mental competency examination.  Citing *United States v. Vasquez*, 918 F.2d 329 (2nd Cir. 1990), the United States argues that the delays arising from the Freddy Ridner's request for a mental evaluation are excludable under the Speedy Trial Act with respect to all Defendants in this action.

In *United States v. Vasquez*, 918 F.2d 329 (2nd Cir. 1990), the Second Circuit addressed whether the delay caused by a co-defendant's pretrial motion for a competency evaluation was excludable time under the Speedy Trial Act against all defendants in the case.  The court held that delays resulting from proceedings to determine a defendant's competency were excluded from calculation of the speedy trial clock as to all defendants, whether or not the delays were

-14-

reasonable.  However, the court noted that when a co-defendant files a motion to sever that is subsequently denied, the court must examine the reasonableness of any delay caused by a co-defendant's motion before it can be excluded as against the complaining defendant.  *Id*. at 336-37.

As noted above, the *Maples* decision discussed whether delays caused a co-defendant are attributable to all defendants in a case.  In doing so, the court distinguished constitutional speedy trial claims from claims based on the Speedy Trial Act.  Specifically, the *Maples* court noted that under the statutory analysis, "an exclusion applicable to one defendant applies to all co-defendants."  *Maples*, No. 04-1880, slip op. 6 (citing *United States v. Holyfield*, 802 F.2d 846 (6th Cir. 1986)).  In contrast, the court held that, in analyzing a constitutional claim "a defendant is not necessarily responsible for his co-defendant's decisions."  *Maples*, No. 04-1880, slip op. 6.  Therefore, inasmuch as the time between when Freddy Ridner filed his motion for a competency evaluation to the present was excludable under the Speedy Trial Act as to Freddy Ridner, the Court also finds that it is likewise excludable as to Scotty Ridner.

Accordingly, the Court concludes that the United States has satisfied its burden of proof in establishing that less than seventy non-excludable days have passed since the date of the Scotty Ridner's indictment.  Therefore, Scotty Ridner is not entitled to dismissal of the indictment against him based on a violation of the Speedy Trial Act.

> C.    *Defendant's Motion for Release from Custody Pursuant to 18 U.S.C. § 3164*

Finally, Scotty Ridner asserts that he is entitled to release from custody pursuant to 18 U.S.C. § 3164.  This claim also lacks merit.  The United States has demonstrated that most of

-15-

the delays in this case are excludable pursuant to 18 U.S.C. § 3161(h).  As correctly noted by the United States, delays excludable under § 3161(g) are specifically excluded when calculating the ninety-day time period necessary to trigger the application of § 3164.  Inasmuch as the United States has shown that less than ninety non-excludable days have passed since the Defendant was incarcerated to await trial, the Defendant is not entitled to release pursuant to § 3164.

III.    **CONCLUSION**

For the reasons stated herein, the Court finds that the indictment against Scotty Ridner should not be dismissed inasmuch as there has been no violation of this Sixth Amendment right to a speedy trial or a violation of the Speedy Trial Act.  In addition, the Court concludes that Scotty Ridner is not entitled to release from custody under 18 U.S.C. § 3164.

Accordingly, it is hereby **ORDERED** that:

1       Defendant Scotty Ridner's Motion to Dismiss [Record No. 98] is **DENIED**; and

2.      Defendant Scotty Ridner's Motion for Release from Custody [Record No. 99] is **DENIED**.

This 31st day of October, 2005.



Signed By:
_Danny C. Reeves_  DCR
**United States District Judge**

-16-